UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFRY HAMILTON,

                    Plaintiff,              Civil Action No. 21-12054

v.                                          Nancy G. Edmunds
                                            United States District Judge

ROSILYN JINDELL *et al.*                    David R. Grand
                                            United States Magistrate Judge

                    Defendants.
_____/

## **REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 19)**

*Pro se* plaintiff Jeffry Hamilton ("Hamilton"), an incarcerated person, brings this civil rights action against defendants Rosilyn Jindal,[1] P.A. ("Jindal"), and her employer, Corizon Health, Inc. ("Corizon") (collectively, "Defendants"), alleging claims of First Amendment retaliation, Eighth Amendment deliberate indifference to his serious medical needs, and failure to reasonably accommodate his disabilities in violation of the Americans with Disabilities Act ("ADA"). (ECF No. 1). The case was referred to the undersigned for all pretrial matters pursuant to 28 U.S.C. § 636(b). (ECF No. 15).

On June 17, 2022, Defendants filed a Motion for Summary Judgment. (ECF No. 19). Hamilton filed a response to this motion on July 8, 2022, and Defendants filed a reply on August 2, 2022. (ECF Nos. 22, 23). With the Court's permission, Hamilton filed a

---

[1] Though the complaint spells this defendant's surname as "Jindell," it appears the correct spelling is "Jindal." (*See* ECF No. 19).

supplemental response on August 19, 2022, and Defendants filed a supplemental reply on

September 28, 2022.  (ECF Nos. 24, 25, 27).

Generally, the Court will not hold a hearing on a motion in a civil case in which a

party is in custody.  *See* E.D. Mich. LR 7.1(f).  Here, the Court finds that the facts and legal

issues are adequately presented in the briefs and on the record, and it declines to order a

hearing at this time.

## I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' Motion

for Summary Judgment **(ECF No. 19)** be **GRANTED**.

## II.   REPORT

### A.    Background

#### i.    Hamilton's Complaint

Hamilton, who is a prisoner currently confined at the Michigan Department of

Corrections' ("MDOC") Gus Harrison Correctional Facility ("ARF"), brings this civil

rights action based on alleged violations of his First and Eighth Amendments rights, as well

as his rights under the ADA.  In his complaint, Hamilton alleges that, since 1996, he has

been "confined to a wheel chair due to paralysis on the entire left side of his body," has

"suffered from neurological damage to his right hand," and is "deaf in his left ear, and

slightly deaf in [his] right ear."  (ECF No. 1, PageID.2).  As a result of his "disabilities,"

in 2005 and 2006, "medical professionals within the [MDOC]" ordered him "special

accommodations," which include "extra sets of clothing, [a] specialized dental floss holder,

and a school exemption."  (*Id.*).  Hamilton alleges that he requires extra sets of clothing

because he "does not have full control of his bladder and sometimes has accidents that soil his clothing," a special dental floss holder because it gives him "the ability to floss his teeth with one hand" as opposed to "two hands," and a school exemption because "[he] is unable to write and has short term memory loss." (*Id.*, PageID.2-3).

Hamilton alleges that, in 2019, he was housed at ARF without any hearing aids, which caused him to "often los[e] awareness of his cellmate being in the[] cell when his cell mate was positioned to [Hamilton's] rear and on his deaf side," which often caused him to bump into his cell mate. (*Id.*, PageID.3). As a result, Hamilton complained to the Warden and Office of Legal Affairs, and requested that "he be placed into a single man cell until he received his two hearing aids." (*Id.*). When the Warden's office eventually informed Hamilton that "health care had denied his ADA accommodation request," Hamilton asked the Warden "to review this decision," to which the Warden responded that "the issue was being reviewed." (*Id.*).

Hamilton alleges that, on June 18, 2020, PA Jindal called him to health care and told him that "because he had contacted legal affairs[] and complained to the warden," Hamilton would "never get a single man cell," and that "she was terminating all of his accommodations." (*Id.*). Hamilton alleges that on that same day, Jindal "did in fact terminate [his] accommodations." (*Id.*). Although no prison employee confiscated any of Hamilton's belongings, Hamilton asserts that in light of PA Jindal's statement, he "relinquish[ed] his extra sets of clothing and his dental floss holder because he was no longer authorized to have them." (*Id.*).

Based on the above allegations, Hamilton sues Jindal and her employer Corizon for

(1) Eighth Amendment deliberate indifference to his medical needs based on Jindal's alleged termination of his special accommodation orders; (2) First Amendment retaliation because Jindal's alleged termination of his accommodations was in retaliation for his having engaged in protected conduct; and (3) ADA violations because Jindal's termination of his accommodations "amounts to a failure to make reasonable accommodations for [his] disabilities." (ECF No. 1, PageID.4-6). As a result, Hamilton seeks declaratory relief and money damages for "injuries sustained." (*Id.*, PageID.6-7).

### ii.  Summary Judgment Evidence

Primarily at issue in this case is Hamilton's contention that, on June 18, 2020, Jindal terminated certain of his preexisting special accommodations orders, allegedly in retaliation for his filing a complaint against healthcare concerning the denial of a separate request for a single cell accommodation. A review of the salient MDOC medical and grievance records provides details of Hamilton's clinical encounter with Jindal on June 18th, as well as the events leading up to and following shortly after the disputed incident.

Relevant here, a MDOC "Special Accommodations Orders" sheet dated November 6, 2019 (the "November 2019 Medical Detail") shows that, between March 2005 and November 2019, Hamilton's medical detail included a list of 14 special accommodation orders with the following "Start Date[s]":

- 03/09/2005: "Housing: Bottom bunk"
- 09/21/2005: "Housing: Extra bedding/clothing, special pillow"
- 03/23/2006: "Housing: Ground floor room"
- 03/09/2005: "Housing: Other, air mattress"
- 02/14/2006: "Medical Equipment/Supplies: Other, roho cushion, pillow"

- 03/09/2005: "Medical Equipment/Supplies: Wheelchair, permanent with LT arm br"
- 03/09/2005: "Other: At risk of heat-related illness"
- 03/09/2005: "Other: Attendant to assist with movement inside institution"
- 03/09/2005: "Other: Handicap table"
- 02/14/2006: "Other: Other, floss holder per DDS"
- 11/06/2019: "Other: school exemption for GED classes"
- 03/09/2005: "Other: Transport vehicle with lift"
- 03/09/2005: "Work Assignment: No driving/dangerous machinery"
- 03/23/2006: "Work Assignment: No standing"

(ECF No. 20, PageID.96).

On June 15, 2020, Hamilton filed a healthcare kite, requesting "Medical" to "ask" the Warden's office for a "temporary" accommodation for a single cell until he "receive[s] a hearing aid" because he keeps "bumping [his] bunky." (*Id.*, PageID.76). On June 17, 2020, Kimberly Korte, RN, responded that "[t]he situation is being looked into." (*Id.*).

One day later, on June 18, 2020, Hamilton was seen by Jindal for an evaluation regarding his request for a single cell accommodation. Jindal documented the clinical encounter in a treatment note dated June 18, 2020, as follows:

> . . . [Hamilton] was seen in the office today for a request for a single cell accommodation. Pt feels that due to his hearing impairment in the left ear, he will not be able to hear his bunkie in the cell behind him or to the left of him, and run into him with the wheelchair. He also stated that he didn't request a permanent single cell accommodation, but a temporary one, pending fitting for a hearing aid. Review of the medical record shows that approval for the hearing aid is pending review from MDOC leadership. Pt denies any fatigue, fever, nightsweats, chills, chest pain, SOB, weight loss, difficulty transferring in and out of wheelchair, donning and doffing clothes, feeding self, showering, and/or toileting.

\* \* \* \* \* \* \* \* \*

> Medical necessity for single cell accommodation not demonstrated at this time per MSAC guidelines. Pt does not have a documented or personal history of gender identity disorder or gender dysphoria, he is not a paraplegic patient with a colostomy and/or ureterostomy, nor does he have any psychological condition that would impair his ability to adjust to a multiple person setting. Medications renewed for constipation. Pt instructed to kite health care for any health concerns or questions.

(*Id.*, PageID.77, 79-80).

During that clinical encounter, Hamilton was provided with a "Medical Detail Special Accommodations" form signed by Jindal and dated June 18, 2020 (the "June 18th Medical Detail"), which reflects a "Housing Restriction" for "Bottom Bunk" and "Elevator"; a "Physical Limitation/Restriction" for "Attendant Assist with Meal or Other Movement"; and use of "Equipment" in the form of a "Wheelchair – Permanent . . . With Left Arm Brace Table attachment." (*Id.*, PageID.81). Under the "Comments" section at the bottom of the form, it states "N/A" (*id.*), which Hamilton contends Jindal inserted rather than the aforementioned 14 special accommodations.

Eight days later, on June 26, 2020, MDOC healthcare received a kite from Hamilton regarding a "Medical Question." (ECF No. 20, PageID.82). That same day, Hamilton was seen by Katherine Miller, RN, for an "Urgent/Emergent encounter" for complaints of "Chest Pain." (*Id.*, PageID.83). RN Miller documented the encounter in a treatment note dated June 26, 2020:

> Symptoms began approx. 15 min ago according to inmate at approx. 1930. Chest pain rated 5/10 stabbing pain that lasted approx. 4-5 min. At first felt short of breath when it happened but no longer while in HC. Heart and lung sounds are normal, vitals are [within normal limits], bp slightly elevated. [W]hen [I] told inmate [I] had to call the doctor [Hamilton] immediately said "I don't want to be sent out I am no longer

6

> having chest pain, it is gone[.]"  Inmate does not appear to be in distress
> at all and then he stated he washed his medical detail/special
> accommodation paperwork in laundry today and would like a copy of
> his medical details.  I printed them off and chart review for review on
> the ones that were not added from Nextgen system.  PA called for
> orders, new orders for bp checks twice a week for one month and inmate
> v/u at this time.  Inmate left hc with no s/sx of distress.

(*Id.*).

During that clinical encounter, Hamilton was provided with another "Medical Detail Special Accommodations" form, this time signed by RN Miller and dated June 26, 2020 (the "June 26th Medical Detail").  (*Id.*, PageID.86).  The June 26th Medical Detail reflects the same special accommodations as the June 18th Medical Detail for "Housing Restriction," "Physical Limitation/Restriction," and "Equipment," but under the "Comments" section, there appears a list of the same 14 special accommodations that was previously listed in the November 2019 Medical Detail but was absent from the June 18th Medical Detail.  (*Id.*).

On June 27, 2020, Hamilton filed a Step I grievance in ARF-20-06-1287-17B ("ARF-1287"), in which he grieved that Jindal had allegedly "deleted" his special accommodations as an act of retaliation:

> This grievance against P.A. Jindal in retaliation and conspiring against
> me violating P.D. 0406160 by deleting all my orders on my medical
> special accommodation such as: Doctor Order School Exemption, Air
> Mattress and left arm brace attached to wheel chair.  Paralyzed; no
> standing[.]  After written medical kite on 6-24-20 to see what P.A.
> Jindal did after she called me over, I found out my orders were deleted
> all doctors orders in retaliation against me.

(*Id.*, PageID.87).  A Step I response for ARF-1287 states that Hamilton's grievance was denied because "[p]er the EMR, ***all accommodations and medical details were renewed***

7

*to 12/26/20.  The Medical Provider did not change any of this prisoner['*]s
accommodations or details*."  (*Id.*, PageID.88) (emphasis added).

In addition to his grievance, Hamilton filed a healthcare kite on June 30, 2020 to
complain that "[his] accommodations [were] all deleted."  (*Id.*, PageID.91).  He received a
kite response that same day from Kimberly Korte, RN, who explained, "No, they are NOT
deleted.  I have attached a copy, MP will place them in on the next Chronic Care visit.  The
Computers WERE Down."  (*Id.*) (emphasis in original).

In addition to the above MDOC documents, both Jindal and Hamilton present their
own affidavits attesting to the events at issue in this case.  In her affidavit, Jindal attests
that she "first evaluated" Hamilton on June 18, 2020, for "complaints related to his hearing
and the desire for a single cell accommodation."  (ECF No. 19-2, PageID.74).  After
reviewing Hamilton's chart, Jindal determined that "he was pending approval for a hearing
[aid] from MDOC leadership" and otherwise "did not have a medical need for a single cell
accommodation pursuant to MSAC guidelines."  (*Id.*).  Jindal attests that she "did not alter
[] Hamilton's special accommodations or medical details during or after this evaluation,"
and that the reason the June 18th Medical Detail failed to populate all of Hamilton's special
accommodation was because "there was an issue with the computer system as identified
by Kimberly Korte, R.N.'s kite response."  (*Id.*).  Jindal attests that Hamilton "*did not have
[to] relinquish his medically necessary special accommodations or medical details*
because of the computer issue."  (*Id.*, PageID.75) (emphasis added).

In his affidavit, Hamilton attests that, on June 15, 2020, he was "informed by the
Warden's office that healthcare had denied [his] request for a single cell."  (ECF No. 22,

PageID.114). Because he thought "the decision was wrong," Hamilton "made a complaint to the Warden. . ." (*Id.*). He attests that, on June 18, 2020, the Warden informed him that his complaint "was being reviewed." (*Id.*). "[T]hat same day," Jindal called Hamilton to her office, sat him down, "use[d] the computer," and began "to confront [him] about having made a complaint against her to the warden." (*Id.*). Jindal then told Hamilton that "because [he] made complaints to the warden and others that [he] would never get a single man cell, . . . she was terminating all of [his] accommodations." (*Id.*). Despite Hamilton's attempts "to plead with [Jindal], telling her that [he] needed [his] accommodations," Jindal "handed [him] a sheet of paper, told [him] that it had already been done, and asked [him] to leave her office." (*Id.*). "The sheet of paper that [Jindal] handed [Hamilton] was a special accommodation for [him] that be[gan] on that date (June 18, 2020), and all of [his] special accommodations had been deleted [except] for [his] wheel chair, and bottom bunk elevator." (*Id.*). Hamilton left Jindal's office feeling "defeated" and "not know[ing] what to do." (*Id.*). When he returned to his housing unit, he "discarded [his] extra clothing because without the special accommodation the extra clothing was now contraband, and [he] could be give[n] disciplinary sanctions and restitution if [he] was caught possessing them." (*Id.*, PageID.115).

Hamilton attests that, eight days later, on June 26, 2020, he saw RN Miller and "complained to her about [his] special accommodations being terminated by [Jindal]." (*Id.*, PageID.115). RN Miller then made a phone call, and after the call, she told him that "she could not access the special accommodation data base to restore [his] special accommodations because she didn't have the clearance," but that "she could write [him] a

medical detail which would allow [him] to possess the necessities that the special accommodations provided him." (*Id.*). Hamilton "objected" because "the medical details expire every six months," and if he accepted the medical detail, it would put himself "in a position to again be retaliated against by [Jindal] when the medical detail expired." (*Id.*). He also "objected" because he felt that "RN Miller was attempting to cover up what [Jindal] had done to [him]." (*Id.*). Hamilton asserted that on June 18, 2020, "the computers were not down," as Jindal was "using the computer, and had used the computer to print out a copy of the special accommodations in which she had deleted all of [his] accommodations with the exception to [his] wheel chair, and bottom bunk elevator." (*Id.*).

Defendants move for summary judgment on Hamilton's claims against them, arguing that it is undisputed from the record evidence that Jindal never terminated Hamilton's special accommodations, and that, at any rate, the medical care provided to Hamilton never changed.

### B.    Standard of Review

Pursuant to Federal Rule of Civil Procedure 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011).  A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most

favorable to the non-moving party.  *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009).  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'"  *Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).  In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion."  *Alexander*, 576 F.3d at 558 (internal quotations omitted).

### C.    Analysis

In their motion, Defendants argue that summary judgment is warranted on Hamilton's claims against them because the basis for such claims – that Jindal "deleted" Hamilton's special accommodations – is wholly unsupported by the record, and that, regardless, the medical care he was provided never changed.  (ECF No. 19, PageID.66-70). As discussed above, in her affidavit, Jindal attests that she "did not alter [] Hamilton's special accommodations or medical details during or after this evaluation," and that the reason the June 18th Medical Detail failed to populate all of Hamilton's special

11

accommodations was that "there was an issue with the computer system as identified by Kimberly Korte, R.N.'s kite response."  (ECF No. 19-2, PageID.74).  Defendants thus contend that Hamilton's claims "boil[] down to a misunderstanding of *a single medical record*," *i.e.*, the June 18th Medical Detail, which "did not have any bearing on [] Hamilton's *actual* medical treatment, care, special accommodations, or medical details" as reflected by the record evidence.  (*Id.*, PageID.67) (emphasis added).  They emphasize that such "misunderstanding regarding the medical records that *did not alter [his] medical treatment in any way* and *did not result in [his] having treatment for his medical concerns withheld* does not evidence a claim for deliberate indifference or retaliation."  (*Id.*) (emphasis added).

In response to Defendants' motion, Hamilton asserts that there exists a genuine issue of material fact as to whether his Eighth and First Amendment rights were violated because his affidavit is "squarely contradictory" to Jindal's affidavit on the issue of "whether or not [Jindal] terminated [his] special accommodation on June 18, 2020."  (ECF No. 22, PageID.106-08).  As to his ADA claim, Hamilton argues that Jindal "effectively excluded [him] from the accommodation service/program provided by the MDOC when she maliciously terminated [his] special accommodations, and she did so in violation of the ADA."  (*Id.*, PageID.109).

Defendants reply that Hamilton's response "fails to cite any evidence in support of his position that PA Jindal even removed his special accommodations," and that he instead "relies on his own conclusory statements to overcome summary judgment."  (ECF No. 23, PageID.122).  Defendants argue that "the medical records speak for themselves, and []

Hamilton's self-serving statements are not supported by any actual evidence," as there is "simply no evidence to support [] Hamilton's claim that PA Jindal removed any of his medical details or accommodations, or that PA Jindal was deliberately indifferent to his medical needs." (*Id.*, PageID.122-23).   Defendants reiterate that Hamilton's claims "merely boil down to a misunderstanding regarding a medical record that did not alter or change his accommodations or medical details." (*Id.*, PageID.123).[2]

As an initial matter, it is necessary to clarify Hamilton's claims against Defendants. Specifically, Hamilton contends that Jindal violated his constitutional and ADA rights when she terminated his special accommodations on June 18, 2020, in retaliation for his complaints to the Warden and Office of Legal Affairs.   In support of his claims, Hamilton essentially relies on two pieces of evidence: (1) his affidavit attesting that Jindal ***told*** him she terminated his special accommodations in retaliation; and (2) a copy of the June 18th Medical Detail, which ***does not show*** a list of the 14 special accommodations orders that

---

[2] In his supplemental response, Hamilton asserts that he "later discovered medical evidence that proves defendant Jindal's sworn statement that the computers were down on June 18, 2020 was made in bad faith." (ECF No. 24, PageID.130).  He attaches a "Medical Encounter" document reflecting that Jindal "was logged onto the health computers entering data" on June 18, 2020, at 12:22, and a "new special accommodation document for [Hamilton] created [that same day] using the same network of computers." (*Id.*, PageID.132-33; *see id.* PageID.136-40).   In their supplemental reply, Defendants assert that "the 'new' evidence [] Hamilton has produced in support of his claim is merely a medical record also produced by Defendants in their Motion for Summary Judgment," and the special accommodation from June 26, 2020 "shows that his complained-of accommodations were still in fact in place, and had start dates ranging from 2005 to 2019." (ECF No. 27, PageID.159-60).  Importantly, Defendants further assert that "the nature and extent of the computer issues that occurred at [ARF] on June 18, 2020, are not central to [] Hamilton's claims" because his "medical records and grievance records confirm that his accommodations were not in fact terminated as he alleges, and he has produced no evidence to support his position that the accommodations were terminated aside from his own self-serving affidavit." (*Id.*, PageID.160).

are listed in both the November 2019 Medical Detail and June 26th Medical Detail.

Based on such evidence, Hamilton argues that there is a genuine dispute of material fact as to whether Jindal terminated his special accommodations such that summary judgment is inappropriate. The Court need not reach that particular issue, however, because regardless of what may or may not appear on the face of the June 18th Medical Detail, Hamilton failed to allege, much less present proper evidence demonstrating, an actual injury he suffered as a result of Jindal's alleged wrongful conduct during the June 18, 2020 clinical encounter. The Court addresses each claim in turn.

### Eighth Amendment Deliberate Indifference

The Eighth Amendment prohibits prison officials from depriving prisoners of "the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To state a valid Eighth Amendment claim, a prisoner must establish a prison official's "deliberate indifference to the health or safety of the inmate." *Wilson v. Yaklich*, 148 F.3d 596, 601 (6th Cir. 1998). "Implicit in this standard is the recognition that the *plaintiff must allege that he has suffered or is threatened with suffering actual harm as a result of the defendants' acts or omissions* before he can make any claim with an arguable basis in Eighth Amendment jurisprudence." *Id.* (emphasis added).

Here, Hamilton's Eighth Amendment claims fail because he has not alleged, must less demonstrated through proper evidence, that he suffered an ***actual harm*** as a result of Jindal's actions. *See Wilson*, 148 F.3d 601. Regardless of whether Hamilton's special accommodation orders appear on the face of the June 18th Medical Detail, there is no evidence whatsoever that, during the relevant time period, any of Hamilton's preexisting

14

special accommodations were actually removed from his possession by a prison official, that he lacked access to or was ever prevented from the use of any of his special accommodations, or that he was ever denied a request to replenish any accommodations. In fact, Jindal's affidavit expressly attests that Hamilton was never required to relinquish any of his special accommodations, and Hamilton fails to present any disputing evidence that shows Jindal or any other MDOC official ever required him to do so.  (ECF No. 19-2, PageID.75 ("To reiterate, Mr. Hamilton's special accommodations and medical details were not altered or modified following the June 18, 2020, evaluation.  Mr. Hamilton **did not have [to] relinquish his medically necessary special accommodations or medical details** because of the computer issue.") (emphasis added)).

To the extent Hamilton attests that he subjectively believed he had to "discard" his extra clothing after his June 18th encounter with Jindal, his own affidavit reflects that he preemptively did so on his *own initiative*, without being ordered by Jindal or another prison official to do so.  (ECF No. 22, PageID.115 ("When I returned to my housing unit, I discarded my extra clothing because without the special accommodation the extra clothing was now contraband, and I could be give[n] disciplinary sanctions and restitution if I was caught possessing them.").  There is also no evidence of a single instance in which Hamilton had to wear soiled clothing because prison officials removed or refused to provide extra clean clothing accommodations as a result of the June 18th Medical Detail. To the contrary, the salient MDOC documents show that, in Hamilton's subsequent clinical encounter with RN Miller, his healthcare kite, and his grievance in ARF-1287, Hamilton never complained about a need for extra clean clothing (or an *actual, present* lack of access

to or use of special accommodations).  They also show that Hamilton was reassured each time that his special accommodations were never changed and remained intact.  (ECF No. 20, PageID.83-88, 91).  For the foregoing reasons alone, Defendants are entitled to summary judgment on Hamilton's Eighth Amendment deliberate indifference claims.

In any event, even addressing the merits of Hamilton's argument that Jindal "denied him his right to clean clothes when [she] terminated his special accommodations for extra clothing and linen," and "did so knowing that [he] had a medical condition that causes him to urinate on himself sometimes twice a day, and knowing that her actions would result in [his] being without clean clothing," the result would be the same.  (ECF No. 22, PageID.108).  The Sixth Circuit has held that "temporary inconveniences" do not suffice to state an Eighth Amendment conditions of confinement claim.  *See Powell v. Washington*, 720 F. App'x 222, 228 (6th Cir. 2017) (citing *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001)).  As to clean clothing specifically, "a prisoner's claim of denial of clean clothes for a brief time fails to state an Eighth Amendment violation."  *Bostic v. Mehr*, No. 20-1031, 2021 WL 5999305, at *5 (W.D. Tenn., Dec. 20, 2021) (citing *Walker v. State Dept. of Corr.*, No. 98-6586, 2000 WL 32057, *1–2 (6th Cir. Jan. 7, 2000)); *see also Wright v. Gregory*, No. 1:21-cv-P79-GNS, 2021 WL 4037594, at *4 (W.D. Ky. Sept. 3, 2021) ("[T]he temporary inconvenience of ... not having clean clothes ... during Plaintiff's nine-day placement in segregation fails to state a claim upon which relief may be granted."); *Jackson v. Powell*, No. 1:18-cv-466, 2018 WL 3722158, at *8 (W.D. Mich. Aug. 6, 2018) ("Plaintiff's alleged temporary deprivations of hygiene items, exercise yard, and laundry service amount to minor inconveniences that do not rise to the level of an

Eighth Amendment violation."). And, as detailed above, Hamilton has not provided any evidence to suggest that he suffered any actual harm as a result of the allegedly removed accommodations. *See Brown v. Timmerman-Cooper*, No. 2:10-cv-283, 2013 WL 430262, at *2 (S.D. Ohio Feb. 4, 2013) ("The denial of laundry facilities or clean clothes may also constitute an Eighth Amendment violation, but only when the inmate claims to have 'suffered a physical injury or a disease as a result of these conditions.'"); *Hill v. Matthews,* No. 1:19-cv-853, 2020 WL 502607, at *10 (W.D. Mich. Jan. 31, 2020) (same); *Presley v. LMPD*, No. 3:16CV-118-TBR, 2017 WL 581325, at *4 (W.D. Ky. Feb. 13, 2017) (same).

For all of the foregoing reasons, Defendants are entitled to summary judgment on Hamilton's Eighth Amendment deliberate indifference claims.

### First Amendment Retaliation

Hamilton also brings First Amendment retaliation claims against Defendants, alleging that Jindal terminated his special accommodations as retribution for his filing complaints to the Warden and the Office of Legal Affairs concerning the denial of his single cell accommodation. A prima facie case for First Amendment retaliation involves three elements: (1) the plaintiff participated in constitutionally-protected activity; (2) the defendant took an adverse action against the plaintiff "likely to chill a person of ordinary firmness" from engaging in the protected conduct; and (3) there is a causal connection between elements one and two – that is, "that the adverse action was motivated at least in part by the plaintiff's protected conduct." *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 255 (6th Cir. 2006) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc)).

17

In seeking summary judgment, Defendants reiterate that Hamilton's claim "boils down to a misunderstanding of a single medical record that did not have any bearing on [his] actual medical treatment, care, special accommodations, or medical details and which was subsequently clarified by nursing staff." (ECF No. 19, PageID.67). They contend that "the adverse action which [] Hamilton claims occurred because of his complaints did not in fact happen, as [he] did not have his medical details or special accommodations modified or terminated by PA Jindal." (*Id.*, PageID.68).

In response, Hamilton asserts that Defendants' motion "focuses only on the second factor" of "adverse action," and that Defendants' argument that he "cannot prove adverse action because [] Jindal never terminated [his] special accommodations" ignores his affidavit and the June 18th Medical Detail which does not list those accommodations. (ECF No. 22, PageID.107).

Taking Hamilton's affidavit as true, Jindal called Hamilton into her office on June 18, 2020 and "began to confront [him] about having made a complaint against her to the warden." (ECF No. 22, PageID.114). Jindal then stated that, because he "made complaints to the warden and others, . . . she was terminating all of [his] accommodations." (*Id.*). Despite Hamilton's pleas that he needed his accommodations, Jindal handed him a copy of the June 18th Medical Detail, "told [him] that it had already been done," and "asked [him] to leave her office." (*Id.*). Hamilton then left her office and returned to his housing unit, where he then "discarded [his] extra clothing because without the special accommodation the extra clothing was now contraband, and [he] could be give[n] disciplinary sanctions and restitution if [he] was caught possessing them." (*Id.*, PageID.114-115). Eight days

later, on June 26, 2020, Hamilton complained to RN Miller about his "special accommodations being terminated by [Jindal]." (*Id.*, PageID.115).  RN Miller told him that "she could not access the special accommodation data base to restore [his] special accommodations because she didn't have the clearance," but that "she could write [him] a medical detail which would allow [him] to possess the necessities that the special accommodations provided me." (*Id.*).  Hamilton "objected." (*Id.*).

Based on these facts, the Court will assume that Hamilton satisfies the first and third prongs of a First Amendment retaliation claim.  He engaged in protected conduct by filing complaints about the denial of his request for a single cell accommodation, and he attests in his affidavit that Jindal told him she was terminating his accommodations in retaliation. Nonetheless, Hamilton's claim fails on the second prong of showing an adverse action.

As the Sixth Circuit has explained, it is not true "that every action, no matter how small, is constitutionally cognizable":

> Like the definition of protected conduct, however, the definition of adverse action is not static across contexts.  Prisoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before an action taken against them is considered adverse.  The benefits of such a standard are that it is an objective inquiry, capable of being tailored to the different circumstances in which retaliation claims arise, and capable of screening the most trivial of actions from constitutional cognizance. We emphasize that while certain threats or deprivations are so de minimis that they do not rise to the level of being constitutional violations, this threshold is intended to weed out only inconsequential actions, and is not a means whereby solely egregious retaliatory acts are allowed to proceed past summary judgment.  Retaliation against a prisoner is actionable if it is capable of deterring a person of ordinary firmness from exercising his or her [First Amendment rights].

*See Thaddeus-X*, 175 F.3d at 398.

19

Applying this precedent, the Sixth Circuit has explained, "'[i]n the prison context, an action comparable to transfer to administrative segregation would certainly be adverse,' as would . . . the deprivation of prescribed pain medication . . ."  *Smith v. Yarrow*, 78 F. App'x 529, 540 (6th Cir. 2003) (quoting *Thaddeus-X*, 175 F.3d at 396, and citing *Hall v. Nusholtz*, 234 F.3d 1268 (Table), 2000 WL 1679458, at *2 (6th Cir. Nov. 1, 2000)).  The Sixth Circuit more recently reaffirmed this view in *O'Brien v. Michigan Dep't of Corr.*, 592 F. App'x 338, 343 (6th Cir. 2014), holding that "a delay in treatment and discontinuance of medication would likely deter a prisoner [], who believed he needed the medication to avoid the symptoms from which he allegedly suffered."

Here, Hamilton fails to present evidence demonstrating that he was actually subjected to an adverse action.  As explained above, despite what may have transpired during the June 18, 2020 clinical encounter with Jindal, the record is undisputed that Hamilton was never ordered to relinquish from his possession any preexisting special accommodation supplies, nor was he actively denied the present or future use of any such accommodations during the relevant time period.  Moreover, each time Hamilton raised his concerns through kites, grievances, or clinical encounters, he was consistently reassured that his special accommodations remained intact.  (ECF No. 20, PageID.83-88, 91).

In sum, because the record contains no evidence of a specific instance in which Defendants actually deprived or delayed Hamilton from receiving and/or enjoying his special accommodations during the relevant time period, the circumstances here fall well short of showing a "deprivation of prescribed pain medication" or a "delay in treatment and discontinuance of medication."  *Smith*, 78 F. App'x at 540; *O'Brien*, 592 F. App'x at

343 (6th Cir. 2014).   Thus, even viewing the evidence in the light most favorable to Hamilton, he cannot be said to have suffered an actionable "adverse action."   Accordingly, Defendants are entitled to summary judgment on Hamilton's First Amendment retaliation claims.

### ADA Claims

Hamilton's final claim is that Jindal violated his rights under the ADA when she "effectively excluded [him] from the accommodation service/program provided by the MDOC when she maliciously terminated [his] special accommodations . . ." (ECF No. 22, PageID.109).   Title II of the ADA provides that no qualified individual with a disability shall, because of that disability, "be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Mingus v. Butler*, 591 F.3d 474, 481–82 (6th Cir. 2010) (citing 42 U.S.C. § 12132).   To state an ADA claim for failure to accommodate, Hamilton must show that "he is disabled, was otherwise qualified to receive prison services, and was denied access to prison services because of his disability." *Douglas v. Muzzin*, No. 21-2801, 2022 WL 3088240, at *6 (6th Cir. Aug. 3, 2022).

For the reasons detailed above concerning his constitutional claims, Hamilton failed to allege, much less present proper evidence demonstrating, a specific instance in which he was actually denied access to any of his special accommodations.[3]   Accordingly,

---

[3] To the extent Hamilton alleges intentional discrimination, he has failed to present any evidence demonstrating that "animus against the protected group was a significant factor" in the alleged discriminatory conduct. *Douglas*, 2022 WL 3088240, at *5.

Hamilton's ADA claims fail as a matter of law, and Defendants are entitled to summary judgment on such claims.

## III. CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment **(ECF No. 19)** be **GRANTED**.

Dated: November 28, 2022        s/David R. Grand
Ann Arbor, Michigan            DAVID R. GRAND
                                    United States Magistrate Judge

## <u>NOTICE TO THE PARTIES REGARDING OBJECTIONS</u>

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge. A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address

specifically, and in the same order raised, each issue presented in the objections.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 28, 2022.

s/Michael E. Lang
MICHAEL E.LANG
Case Manager
